## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARK, a Not-for-Profit Corporation,
205 SE Grand Ave, Suite 207
Portland, Oregon 97214; GAYE
ADAMS, 2202 E. Water St.
Tucson, Arizona 85719; GREG
LEWIS, 2202 E. Water St.
Tucson, Arizona 85719; STEPHEN           Civ. No. 12-1505
SAMPLE, 5912 E Tally Ho Drive,
Cave Creek, Arizona, 85331; SCOTT        **COMPLAINT**
SILVER, 248 NW Wilmington Ave.,
Bend, Oregon  97701; and DAVID
WIMERT, 1657 Geneva Circle
Longmont, Colorado 80503;

        Plaintiffs,

v.

UNITED STATES FOREST
SERVICE,

        Defendant.

### INTRODUCTION

1. This action challenges the policy of the defendant United States Forest
Service in allowing companies, known as "concessionaires," to charge members of
the public to use public lands in a way that the agency itself cannot charge, in
violation of the Federal Lands Recreation Enhancement Act, 16 U.S.C. §§ 6801-
6814 ("REA"), as applied to five different areas throughout the country.  This
action also challenges the agency's policy of exempting site-specific decisions to
authorize concession contracts from the REA's requirement that any new or

increased fees be subjected to public notice and a review process by Recreation Resource Advisory Committees (RRACs) at those same areas.

**JURISDICTION, CAUSE OF ACTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question).

3. The cause of action for plaintiffs' claims is the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  The challenged final agency actions include the decision notices and/or permits for the challenged individual actions.

4. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e), because the Defendant resides in this district, and the challenged policies were promulgated in this district.

**PARTIES**

5. Plaintiff BARK is a not-for-profit corporation incorporated in the state of Oregon.  Bark has approximately 7,000 members, many of whom who live near the Mt. Hood National Forest, and regularly recreate there.  Bark has been extensively involved in the administrative process concerning the challenged decision on the Mt. Hood National Forest covering the transfer of 28 sites (including the Big Eddy day use site and Bagby Hot Springs) to private management, and uses these areas on a regular basis.  Barks' members have been adversely affected by either having to pay new fees at these areas, or by being dissuaded from using them due to the new fees.

6. Plaintiffs GREG LEWIS and GAYE ADAMS are residents of Tucson, Arizona.  They have visited Rose Canyon Lake in the Coronado National Forest, which is a Forest Service site managed by Recreation Resource Management, a private company.  Even though each time they visited that site they did not use any facilities or services, they were charged $8.00 to enter the area with their car and park within it, or were charged $1.00 each to park three miles down the road and walk into the area.

7. Plaintiff STEPHEN SAMPLE is a resident of Cave Creek, Arizona.  He has visited the Tonto National Forest near and North of Payson, Arizona, to hike the trails on the East Verde River.  These areas are identified as First Crossing, Water Wheel, Second Crossing and Third Crossing, which are administered by Recreation Resource Management, a private company.  He was required to pay $6.00 to enter the Second Crossing area, even though he did not intend to use any facilities or services, and did not use any.

8. Plaintiff DAVID WIMERT is a resident of Longmont, Colorado.  He has visited Rampart Reservoir, west of Colorado Springs, Colorado, in the Pike National Forest, to recreate without using any facilities or services.  It is operated by Rocky Mountain Recreation Company, and he was charged $3.00 to enter the area.

9. Plaintiff SCOTT SILVER is a resident of Bend, Oregon.  In 2012 he purchased a Northwest Forest Pass, which is supposed to allow him to visit any area of the National Forests in Oregon and Washington where a fee is charged for free. He has visited Walton Lake located on the Ochoco National Forest about 50

miles northeast of Bend, Oregon, which is operated by concessionaire Aud and Di

Campground Operations.  He was charged $5.00 to enter the area, despite having

the Northwest Forest Pass.

10. Defendant UNITED STATES FOREST SERVICE is a federal agency

within in the Department of Agriculture that is responsible for managing the

National Forests, and which approved the policies challenged in this suit, as well as

the individual special use permits and decision documents involved.

## FACTS

### The Federal Lands Recreation Enhancement Act ("REA") and its Legislative History

11.     In 1996, Congress and the President passed legislation as part of a

larger appropriations bill to establish the Recreational Fee Demonstration Program

(often referred to as "Fee Demo"), which authorized federal land management

agencies such as the Forest Service to collect fees at a limited number of

recreational sites. Omnibus Consolidated Rescissions and Appropriations Act of

1996, Pub. L. No. 104-134, Title I, Sec. 101(C) [title III, Sec. 315], 110 Stat. 1321.

Its goal was to "demonstrate the feasibility of user-generated cost recovery for the

operation and maintenance of recreation areas or sites and habitat enhancement

projects on Federal lands." *Id*. at § 315(a).

12. The response by the public was overwhelmingly negative, due to agencies

such as the Forest Service charging fees for access to undeveloped public land.

Resolutions were passed by many state legislatures, counties, and cities, opposing

the imposition of fees under the Fee Demo program for simple access to public

lands, on the grounds that such fees erect barriers to low-income citizens, represent double taxation for access to non-developed areas for which additional fees are not appropriate, undermine the democracy and freedom of free recreation on public lands, and represent a commoditization and commercialization of public lands, encouraging a feedback loop of fees and developments (often run by private contractors) on previously undeveloped lands.

13. Prior to the final extension of the Fee Demo program in 2003 (which had been reauthorized periodically since 1996 in annual appropriations bills), an amendment was introduced in the House Committee on Resources by Representative DeFazio, to limit the Fee Demo program to National Parks, and eliminate it for Forest Service and other lands. As stated by Representative DeFazio:

> [There are] those of us who feel very strongly that levying these fees indiscriminately across the Forest Service and the BLM [Bureau of Land Management], to nondeveloped areas in particular, is of great concern. Basically, if you want to drive your car around a park and go hunting or go fishing or just walk with the kids or the dog, you have to buy a pass for nondeveloped sites, and a lot of us have strong concerns about that.

2004149 Cong. Rec. H7025-06 at H7033 (2003 WL 21673066) (daily ed. July 7, 2003). In response to Representative DeFazio's concerns, the chairman of the committee, Representative Pombo (who unlike Representative DeFazio was a supporter of the Fee Demo program generally), stated:

> That is something that we are going to change. There is going to be very strict guidelines that come out of an authorization that goes to these agencies so that this does not happen in the future. I will say I oppose doing the amendment at this point in time, but I will tell the gentleman from Oregon (Mr. DEFAZIO) that in the future, if we cannot authorize this program and

change the way that it is being run, that I would join him in eliminating the
program all together . . ..

*Id*. at H7034.

14. Representative DeFazio's amendment did not pass.  However, the
following year, in light of the continued negative public reaction to the Fee Demo
program, Congress refused to reauthorize it and instead passed the Federal Lands
Recreation Enhancement Act ("REA"), the statute at issue in this case. 16 U.S.C. §§
6801-6814.  The REA states in relevant part:

> *Except as limited by subsection (d) of this section,* the Secretary may charge a
> standard amenity recreation fee for Federal recreational lands and waters
> under the jurisdiction of the Bureau of Land Management, the Bureau of
> Reclamation, or the Forest Service, but only at the following:
>
> **(1)** A National Conservation Area.
>
> **(2)** A National Volcanic Monument.
>
> **(3)** A destination visitor or interpretive center that provides a broad
> range of interpretive services, programs, and media.
>
> **(4)** An area–
>
>> **(A)** that provides significant opportunities for outdoor
>> recreation;
>>
>> **(B)** that has substantial Federal investments;
>>
>> **(C)** where fees can be efficiently collected; and
>>
>> **(D)** that contains all of the following amenities:
>>
>>> **(I)** Designated developed parking.
>>>
>>> **(ii)** A permanent toilet facility.
>>>
>>> **(iii)** A permanent trash receptacle.

**(iv)** Interpretive sign, exhibit, or kiosk.

**(v)** Picnic tables.

**(vi)** Security services.

16 U.S.C. § 6802(f) (emphasis added).  The subsection (d) limitations on this fee

authority referred to in subsection (f) are:

(d) Limitations on recreation fees

(1) Prohibition on fees for certain activities or services

*The Secretary shall not charge* any standard amenity recreation fee or expanded amenity recreation fee for Federal recreational lands and waters administered by the Bureau of Land Management, the Forest Service, or the Bureau of Reclamation under this chapter for any of the following:

(A) Solely for parking, undesignated parking, or picnicking along roads or trailsides.

(B) For general access unless specifically authorized under this section.

(C) For dispersed areas with low or no investment unless specifically authorized under this section.

(D) For persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services.

(E) For camping at undeveloped sites that do not provide a minimum number of facilities and services as described in subsection (g)(2)(A) of this section.

(F) For use of overlooks or scenic pullouts.

(G) For travel by private, noncommercial vehicle over any national parkway or any road or highway established as a part of the Federal-aid System, as defined in section 101 of Title 23, which is commonly used by the public as a means of travel

between two places either or both of which are outside any unit or area at which recreation fees are charged under this chapter.

(H) For travel by private, noncommercial vehicle, boat, or aircraft over any road or highway, waterway, or airway to any land in which such person has any property right if such land is within any unit or area at which recreation fees are charged under this chapter.

(*I*) For any person who has a right of access for hunting or fishing privileges under a specific provision of law or treaty.

(J) For any person who is engaged in the conduct of official Federal, State, Tribal, or local government business.

(K) For special attention or extra services necessary to meet the needs of the disabled.

16 U.S.C. § 6802(d) (emphasis added).  Thus, while the Forest Service is authorized to charge visitors an "amenity fee" for use of developed facilities and services, it may not simply charge an "entrance fee" to an area when visitors do not use those developed facilities and services. *See also* 16 U.S.C. § 6802(e)(2) ("Prohibited sites-The Secretary shall not charge an entrance fee for Federal recreational lands and waters managed by the Bureau of Land Management, the Bureau of Reclamation, or the Forest Service.").

    15. The REA further states: "Notwithstanding any other provision of this chapter, a third party may charge a fee *for providing a good or service* to a visitor of a unit or area of the Federal land management agencies in accordance with any other applicable law or regulation." 16 U.S.C. § 6813(e) (emphasis added).

    16. Accordingly, the Forest Service or a private company operating on National Forest lands under a special use permit issued by the Forest Service may

charge a fee to visitors of an "area" that contains bathrooms, picnic tables and the

other developed amenities listed subsection (f)(4), except that under subsection (d) it

may not charge people entering that area to simply travel through it, or who park

and hike, picnic or camp in undeveloped areas, unless those visitors actually use

both facilities and services as described in 16 U.S.C. § 6802(d)(1)(d).  The REA

states that only the use of facilities and services may be charged for, not the mere

availability of such facilities and services.  *Id.*  Likewise, the agency may not charge

visitors who visit only scenic overlooks, or other users listed in subsection (d), such

as people on official government business or members of Indian tribes with tribal

hunting rights.

17. As stated in the House committee report authored by Representative

Pombo, the final REA as amended

> clarified where a fee may and may not be charged while also establishing
> types of fees. *This section was overly prescriptive to alleviate concerns of those
> who no longer trust certain federal land management agencies with the
> recreation fee authority.  For example, the amendment made clear that the
> USFS and the BLM will not be permitted to charge solely for parking, scenic
> pullouts, and other non-developed areas* while the NPS [National Park
> Service] and the FWS [U.S. Fish and Wildlife Service] may continue to charge
> an entrance fee.

H.R. Rep. 108-790(I), 108th Cong., 2nd Sess. 2004 (Nov. 19, 2004), 2004 WL

2920863 at *18 (emphasis added).  So while supporters in Congress of the

predecessor Fee Demo program may have viewed the new REA restrictions as

"overly prescriptive," they nonetheless intentionally passed them into law,

acknowledging that some members of Congress at least viewed them as necessary

to correct the practice under the Fee Demo program by the Forest Service and other

agencies of "charg[ing] solely for parking, scenic pullouts, and other non-developed

areas." *Id.*

18.  The REA further requires that:

(a) In general
As required in this section, the Secretary shall provide the public with
opportunities to participate in the development of or changing of a recreation
fee established under this chapter.

(b) Advance notice
The Secretary shall publish a notice in the Federal Register of the
establishment of a new recreation fee area for each agency 6 months before
establishment. The Secretary shall publish notice of a new recreation fee or a
change to an existing recreation fee established under this chapter in local
newspapers and publications located near the site at which the recreation fee
would be established or changed.

(c) Public involvement
Before establishing any new recreation fee area, the Secretary shall provide
opportunity for public involvement by--

   **(1)** establishing guidelines for public involvement;

   **(2)** establishing guidelines on how agencies will demonstrate on an annual
   basis how they have provided information to the public on the use of
   recreation fee revenues; and

   **(3)** publishing the guidelines in paragraphs (1) and (2) in the
   Federal Register.

16 U.S.C. § 6803.

19. The Forest Service "shall establish a Recreation Resource Advisory

Committee [RRAC] in each State or region for Federal recreational lands and

waters managed by the Forest Service . . .." 16 U.S.C. § 6803(d)(1)(A).  RRACs are

required so that they "may make recommendations to the Secretary regarding a

standard amenity recreation fee or an expanded amenity recreation fee, whenever

the recommendations relate to public concerns in the State or region covered by the Committee . . . ." 16 U.S.C. § 6803(d)(2).

### The Challenged Policies And Applications of These Policies

20. The Forest Service issues special use permits to concessionaires that allow them to charge visitors to Forest Service areas managed by the companies even when visitors do not use any facilities or services of the area, but simply wish to enter Forest Service lands to engage in undeveloped recreation.

21. For instance, at Rose Canyon Lake in the Coronado National Forest in Arizona, the concessionaire requires those entering the site by vehicle to pay an $8.00 parking fee, even if they do not use any facilities or services, and charges individuals $1.00 each if they park at least three miles away and enter on foot, regardless of whether they use any facilities or services.

22. At the recreation area called the Second Crossing on the Tonto National Forest near Payson, Arizona, visitors are required by the concessionaire to pay $6 to park to use the area, regardless of whether they use any facilities or services.

23. At Rampart Reservoir, west of Colorado Springs, Colorado, in the Pike National Forest, the concessionaire charges visitors $6.00 to park and to recreate without using any facilities or services, unless they have a senior or other federal recreation  pass, in which case they are charged $3.00.

24. At Walton Lake located on the Ochoco National Forest about 50 miles northeast of Bend, Oregon, the concessionaire charges visitors a $5.00 day use fee to

recreate in the area, even if they have a Northwest Forest Pass, and/or even if they use no facilities or services.

25. Further, the special use permits allowing these charges were never subjected to any public notice and comment process, and were not subjected to RRAC review.  The Forest Service has taken the position that new fees imposed through the approval of special use permits to concessionaires need not be subjected to the public process and RRAC provisions of the REA.

26. In the Mount Hood National Forest in Oregon, the Forest Service recently approved a special use permit covering 28 sites, including the "Big Eddy" day-use area, where visitors have traditionally parked to swim in the Clackamas River free of charge.  The private operator now charges visitors to use this area, even though it does not contain substantial developed amenities and even when visitors do not use the minimal amenities present.

27.  Also contained in the Mt. Hood concessionaire permit was a transfer of the popular Bagby Hot Springs site from the Forest Service to a private management company who then created a new fee area.  Previously, members of the public who came to enjoy the Hot Springs by car were charged a $5 parking fee per vehicle.  If people parked in areas other than the designated lot, or hiked in to the hot springs from one of the many trails in the area, they did not have to pay a fee.   Under the new special use permit, the concessionaire now charges $5 per person to soak in Bagby Hot Springs, regardless of how they arrive.  While the Mt. Hood special use permit was subjected to review under the National Environmental

Policy Act, 42 U.S.C. § 4321 et seq., it did not undergo public review through the

the RRAC process of the REA.


## CLAIMS FOR RELIEF

### Claim One:

28. The above paragraphs are incorporated here by reference.

29. The policy and practice of permitting private operators to charge visitors

to National Forest areas when the visitors do not use any facilities or services, and

the application of this policy to Plaintiffs at the areas known as Rose Canyon Lake,

Second Crossing, Rampart Reservoir, Walton Lake, and Big Eddy, violates the REA,

16 U.S.C. §§ 6801-6814.  Accordingly, the Forest Service has taken actions that are

arbitrary, capricious, and otherwise not in accordance with law, within the meaning

of the Administrative Procedure Act. 5 U.S.C. § 706(2).

### Claim Two:

30. The above paragraphs are incorporated here by reference.

31. The policy and practice of imposing new fees for recreation areas through

the issuance of special use permits without submitting them to public notice and

RRAC processes, and the application of this policy to Plaintiffs at the areas known

as Rose Canyon Lake, Second Crossing, Rampart Reservoir, and Walton Lake, and

through the Mount Hood Developed Recreation Site Special Use Permit, violates the

REA, 16 U.S.C. §§ 6801-6814.  Accordingly, the Forest Service has taken actions

that are arbitrary, capricious, and otherwise not in accordance with law, within the

meaning of the Administrative Procedure Act. 5 U.S.C. § 706(2).

## **REQUEST FOR RELIEF**

Plaintiffs respectfully request that the Court:

1. Declare that the policy of permitting private companies to charge visitors to National Forest areas when the visitors do not use any facilities or services, and the application of this policy to Plaintiffs at the areas known as Rose Canyon Lake, Second Crossing, Rampart Reservoir, Walton Lake, and Big Eddy, violates the REA, 16 U.S.C. §§ 6801-6814;

2. Declare that the policy of imposing new fees for recreation areas through issuance of special use permits to private operators without submitting these permits to public notice and RRAC processes, and the application of this policy to Plaintiffs at the areas known as Rose Canyon Lake, Second Crossing, Rampart Reservoir, Walton Lake, and through approving the Mount Hood Developed Recreation Site Special Use Permit, violates the REA, 16 U.S.C. §§ 6801-6814;

3. Set aside these policies of the Forest Service;

4. Set aside those parts of the Forest Service decisions authorizing special use permits at Rose Canyon Lake, Second Crossing, Rampart Reservoir, Walton Lake, and the Mount Hood Developed Recreation Site Special Use Permit ,which permit private companies to charge visitors to National Forest areas when the visitors do not use any facilities or services;

5. Require the special use permits for Rose Canyon Lake, Second Crossing, Rampart Reservoir, Walton Lake, and the Mount Hood Developed Recreation Site Special Use Permit to go through the public notice and RRAC requirements of the REA;

6. Order the Forest Service to refund Plaintiffs monies they have unlawfully had to pay under the challenged policies;

7. Award Plaintiffs their costs of litigation, including reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

8. Award such other relief as the Court deems just and proper.


RESPECTFULLY SUBMITTED September 11, 2012.


        /s/Matt Kenna
        Matt Kenna, D. D.C. Bar # CO0028
        Public Interest Environmental Law
        679 E. Ave, Suite 11B
        Durango, CO  81301
        (970) 385-6941
        matt@kenna.net